**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re:<br><br>HYUNGKEUN SUN and<br>YEONAM KIM SUN,<br><br>　　　Debtors. | Case No. 12-25005 MER<br><br>Chapter 11 |

**ORDER**

Debtors Hyungkeun Sun and Yeonam Kim Sun (the "Suns") have been engaged in litigation with creditors Wonjoong Kim and Yoonee Kim (the "Kims") for several years, both in and out of this Court. The Suns' case is now before the Court on the Kims' Motion to Dismiss.

**JURISDICTION**

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b)(1).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) as it involves matters concerning the administration of the estate and the bankruptcy remedies of conversion to Chapter 7 liquidation and dismissal.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

The Suns filed their voluntary Chapter 7 petition on July 18, 2012.  Their Chapter 7 discharge entered on October 25, 2012.  No action to revoke this discharge has ever been filed.

On September 12, 2014, this Court entered an order in Adversary Proceeding No. 12-1660 MER, finding the Suns' debt to the Kims was nondischargeable under 11 U.S.C. §523.[1]  The Suns appealed, and the Court's decision was affirmed in part, reversed in part, and remanded for recalculation of damages.  However, on October 29, 2015, the parties reached a stipulation as to damages, and the Court entered the stipulated judgment in the amount of $1,441,555.38 on November 10, 2015.

On March 26, 2015, the Suns filed a Motion for Voluntary Conversion to Chapter 11, and the Order converting the case from Chapter 7 to Chapter 11 entered March 26, 2015.  The Kims filed a Motion to Alter Or Amend Order

---

[1] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

Converting Case to Chapter 11, but the parties entered into a stipulation resolving that Motion, which required the Suns to file a negotiated plan of reorganization by August 17, 2015.  The Suns obtained two extensions of time, and filed a plan and a disclosure statement on October 28, 2015.  They filed an amended plan and disclosure statement on January 26, 2016.[2]

A.   The Suns' Assets

The Suns own real property in San Jose, California (the "San Jose Property") and 100% of the stock in Y&K Sun, Inc. ("Y&K").  Y & K owns a portion of a shopping center on West Colfax Avenue, Denver, Colorado (the "JCRS Property").   Further, the Suns own a 100% interest in Telcel Mobile, LLC, ("Telcel") valued at $10,000.  Telcel rents space at the JCRS Property.

The Suns have no equity in the San Jose Property, but pay $1,000 per month in adequate protection payments to the Rosenthal Trust, the holder of the first lien on the San Jose Property.  The San Jose property is subject to liability for environmental remediation in an unknown amount.  The JCRS Property is subject to the secured claim of First National Bank ("FNB").  FNB's claim is cross-collateralized with both the JCRS Property and the San Jose Property.

The Suns receive $5,800 in monthly rent from the San Jose property, but pay expenses of $3,400, leaving a net amount of $2,400.  They also receive $2,000 per month as managers of Y & K.  The Suns have average monthly expenses of approximately $4,000, and project monthly disposable income of $813.

The Suns' appraisal of the JCRS Property values it at between $4.6 million and $4.9 million, with a first lien to FNB in the amount of $2,613,874.26.  Mr. Sun continues to seek new lessees for the JCRS property, and believes it could be worth as much as $6.2 million upon completion of improvements.

B.   The Suns' Proposed Plan

The Plan states the Kim's nondischargeable debt is subject to subordination pursuant to § 510(b), because the debt arises from stock transferred to the Kims by the Suns.  The remaining unsecured creditors will receive approximately .05% of their claims over sixty months, from payment of the Suns' $813 in disposable monthly income.  Because Y & K, not the Suns, owns the JCRS Property, the Plan treats FNB's claim as an impaired, unsecured deficiency claim with regard to the San Jose Property, in the amount of $2,531,519.83.

---

[2] Hereafter, the amended plan and amended disclosure statement will be referred to as the "Plan" and the "Disclosure Statement".

The Plan does not contain a provision for Y & K to pursue sale or refinancing of the JCRS Property. However, the Suns anticipate receiving distributions from Y&K from a sale or refinancing, asserting "subject to either resolving the Kims' claims against Y&K or a chapter 11 bankruptcy for Y&K, [the Suns] anticipate selling some or all of the JCRS Property or refinancing the mortgage on the JCRS Property within five years."[3]

## DISCUSSION

**A.  Cause For Dismissal or Conversion Has Been Shown Under § 1112(b).**

Under § 1112:

> (b)(1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.[4]

The Court has broad discretion under Section 1112(b), and "cause" is a flexible concept.[5] Section 1112(b)(4) sets forth sixteen examples of cause, but the list is not exhaustive.[6]

> 1.  *Continuing Loss to or Diminution of the Estate and Absence of Reasonable Likelihood of Rehabilitation.*

Section 1112(b)(4)(A) is pertinent to the instant case. It provides: "For purposes of this subsection, the term "cause" includes--(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. . ."[7]

---

[3] Disclosure Statement, p. 17.

[4] § 1112(b)(1).

[5] *In re Pac. Rim Invs., LLP*, 243 B.R. 768, 772 (D. Colo. 2000); *In re Autterson,* 547 B.R. 372, 410 (Bankr. D. Colo. 2016).

[6] *See Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir.1989) (Section 1112(b) list is "not exhaustive").

[7] § 1112(b)(4)(A). The Kims also raised arguments under §1112(b)(4)(B) and (F). However, the Court finds the evidence presented regarding such allegations relates more closely to loss to the estate and absence of a reasonable likelihood of reorganization pursuant to § 1112(b)(4)(A).

3

The appraised value of the JCRS Property owned by Y & K is approximately $4.6 million,[8] and the Suns assert a possible value of $6.2 million if improvements are made. If the JCRS Property with its potential current value of $4.6 were sold or refinanced, and proceeds went to the estate, a more than nominal return to creditors could occur.[9]

The problem with this approach is the Suns do not own the JCRS Property. Y & K owns it. Although the Suns' testimony, as well as the Disclosure Statement and accompanying financial information, make much of the current appraised value and possible future increase in value of the JCRS Property, the JCRS Property is not property of this bankruptcy estate.[10] Section 1112(b)(4)(A) does not pertain to property other than property of the estate. Therefore, the only values relevant to the question of loss and diminution are the values of the assets owned by the Suns themselves.

The Disclosure Statement indicates as of December, 2015, Y & K had a value of $900,000 and the San Jose Property had a value of $750,000. Adding Telcel's stock value of $10,000 results in fixed assets for the Suns of $1,660,000 before liens. The Suns' balance sheet, attached as part of Exhibit 2 to their Disclosure Statement, shows prepetition liability of $3,678,678 in secured debt, eradicating any equity in their fixed assets.[11] The balance sheet also shows $2,612,650 in prepetition unsecured debt.[12]

The Suns list post-petition, pre-conversion liability of $152,887. In addition, the Suns' monthly operating reports[13] indicate the accrual of $136,844 in unpaid attorneys' fees by November, 2015[14] and $146,344 by December,

---

[8] Kims' Exhibit AP, Appraisal.

[9] However, the JCRS Property is not listed for sale, and, as noted herein, has no firm commitment for a refinancing loan.

[10] They value Y & K at zero because of the litigation, but allege the estate is not being diminished because of the value of the property held by Y & K. They cannot have it both ways.

[11] See Docket No. 199, Amended Disclosure Statement, Exhibit 2, Monthly Operating Report for December, 2015. Secured debt passes through bankruptcy undisturbed with respect to the collateral securing the debt. *Johnson v. Home State Bank*, 501 US 78, 82-83 (1991); *In re Lowther*, 285 B.R. 344, at *3 (10th Cir. BAP Feb. 8, 2002) (Table); *In re Waterman*, 469 B.R. 334, 340 (Bankr. D. Colo. 2012).

[12] *See* Docket No. 199, Amended Disclosure Statement, Exhibit 2, Monthly Operating Report for December, 2015.

[13] See Kims' Exhibits 18-25.

[14] *See* Kims' Exhibit 25 and Suns' Exhibit M, Monthly Operating Report for November, 2015.

2015.[15] The Suns estimate owing $150,000 in administrative expenses as of the effective date of the Plan, with an additional $20,000 expected to be approved.[16]

Thus, the Suns continue to accrue substantial administrative costs while building no equity in the San Jose Property and adding no value to Y & K or Telcel.[17] Clearly, the estate is suffering continuing loss and diminution.

This leads to the second portion of § 1112(b)(4)(A)--whether the Suns have a reasonable likelihood of rehabilitation. They do not. If their entity, Y & K, sold or refinanced the JCRS Property at the appraised or higher value, and if the Suns received some of the proceeds, they might be able to pay off the secured debt and the nondischargeable debt owed to the Kims. However, the Suns produced no actual lease agreements, no expressions of interest at profitable terms, and no proposals for sale or refinance.[18]

The Suns' projected disposable income of $813 per month provides only $48,000 to be paid over the sixty-month life of the Plan, but it is not clear how the Suns intend to pay the substantial administrative expenses. The Plan does not provide for Y & K to make such payments, and Y & K has not entered into any agreement to pay to the Suns any proceeds from any new leases, loans, or sale.

The Suns apparently expect the sale or refinancing of the JCRS Property to pay not only the administrative expenses, but the Kims' claim and those of other creditors. This expectation is optimistic, but, in the absence of contracts for new leases, a sale, or a refinance, it is purely speculative. For these

---

[15] Docket No. 199, Amended Disclosure Statement, Exhibit 2, Monthly Operating Report for December, 2015.

[16] Amended Disclosure statement, page 19.

[17] The operating reports from November 2015 and December 2015 show attorneys' fees accruing at approximately $10,000 per month. *See* Kims' Exhibit 25 and Suns' Exhibit M, Monthly Operating Report for November, 2015; Docket No. 199, Amended Disclosure Statement, Exhibit 2, Monthly Operating Report for December, 2015.

[18] At trial the Suns presented Exhibit BC, designated a "Prequalification Certificate" from VM Commercial Lending, Inc., apparently a mortgage broker. It lists three possible, unidentified lenders. Exhibit BC describes a refinance of the JCRS property with a loan of $3,450,000. The hypothetical loan would be made to Y & K and guaranteed by Mrs. Sun. It would be a recourse debt, actually raising the amount of debt on the JCRS Property by $837,000, and making the Suns subject to additional postpetition individual liability. Further, the certificate lists such items as personal and business financial statements, tax returns, credit authorizations, and copies of leases which would need to be approved before a letter of intent to loan would issue. The certificate is thus completely speculative and does not support a reasonable likelihood of rehabilitation.

reasons, the Court finds the Suns do not have a reasonable likelihood of rehabilitation.

2. *Bad Faith.*

"Bad faith" does not appear in the "causes" listed in § 1112(b)(4). However, "[a]lthough a debtor's bad faith in filing a petition is not an enumerated ground for dismissal under § 1112(b), courts have overwhelmingly held that proof of such an allegation may be 'cause' for dismissal."[19]

> Findings of bad faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and are based on multiple factors rather than on any single event. In this Circuit, several factors have been identified which support a finding of a bad faith filing in a Chapter 11 case: 1) the debtor has only one asset; 2) the debtor has only one creditor; 3) the debtor acquired property which was posted for foreclosure and the prior owners had been unsuccessful in defending against the foreclosure; 4) the debtor was revitalized on the eve of foreclosure to acquire the insolvent property; 5) the debtor has no ongoing business or employees; 6) the debtor lacks a reasonable possibility of reorganization; and 7) the Chapter 11 filing stopped the foreclosure. Individual factors, in and of themselves, may not lead to a conclusion that a bankruptcy filing is in bad faith. Bad faith exists when the cumulative effect of these individual factors, viewed in the totality of the circumstances, paints a factual picture leading to the inescapable conclusion that use of the bankruptcy laws by the debtor is inappropriate.[20]

In addition, "a valid purpose for reorganization is necessary in order to conclude that the debtor's petition was affirmatively filed in good faith."[21]

---

[19] *In re Muth*, 2014 WL 1712527, at *5 (10th Cir. BAP May 1, 2014) (Table) (internal quotation marks omitted) (quoting *In re First Assured Warranty Corp.*, 383 B.R. 502, 543 (Bankr. D. Colo. 2008), and citing *In re Pac. Rim Invs., LLP*, *supra*; *In re G3 Marina Adventures L.L.C.*, 2010 WL 4736212, at *3 (Bankr. E.D. Okla. Nov. 16, 2010); and *In re Melendez Concrete, Inc.*, 2009 WL 2997920, at *3 (Bankr. D.N.M. Sept. 15, 2009)).

[20] *In re Walck*, 2012 WL 2918492, at *5 (Bankr. D. Colo. July 17, 2012) (Slip Copy) (citing *In re Nursery Land Development, Inc.*, 91 F.3d 1414, 1416 (10th Cir. 1996); *In re Gunnison Ctr. Apts.*, 320 B.R. 391, 400 (Bankr. D. Colo. 2005); *In re Plumberex Specialty Products, Inc.*, 311 B.R. 552, 560 (Bankr. C.D. Cal. 2004); *In re Kasdorf*, 64 B.R. 294, 295 (Bankr. D. Colo. 1986)).

[21] *See NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 129 (3rd Cir. 2004) ("To be filed in good faith, a petition must do more than merely invoke some distributional mechanism in the Bankruptcy Code. It must seek to create or preserve some value that would otherwise be lost-not merely distributed to a different stakeholder-outside of bankruptcy.); *In re Springs*

6

At the outset of the discussion of bad faith, the Court notes the parties spent much time and virtual ink on the question of whether the Kims' claim may be subordinated under the plan pursuant to § 510(b). This question is not relevant to the present inquiry. It is a red herring. The Court need not rule on subordination to review the question of bad faith.

a. <u>The Suns have only two assets</u>.

The Suns have only two assets capable of producing any value for the estate. The San Jose Property provides a small amount of rental income, but also requires payment of expenses. The Suns admit they have no equity in the San Jose Property. The stock in Y & K is valued by the Suns at zero because of pending litigation, but it has possible value in the future due to its ownership of the JCRS Property. The only other asset owned by the Suns, Telcel, has minimal value.[22] For the reasons stated above, any value associated with Y & K is speculative. This factor therefore supports a finding of bad faith.

b. <u>The Suns have only one unsecured creditor whose prepetition debt has not been discharged in their Chapter 7</u>.

The San Jose Property is subject to the secured claim of the Rosenthal Trust in the amount of $77,000. It also serves as cross collateral for the secured debt of First National Bank. However the Suns' prepetition unsecured debts were discharged, with the exception of the debt to the Kims. Thus, the Suns have only two prepetition secured creditors, and only one prepetition undischarged unsecured creditor. While nothing prevents the Suns from paying discharged debts, doing so while making no progress toward paying either the secured creditors or the nondischarged debt supports a finding of bad faith.

c. <u>The Suns have no employees but some ongoing business with the San Jose Property and the JCRS Property owned by Y & K</u>.

The Suns do not have any employees and do not pay employment taxes.[23] However, they collect the rent and pay the expenses on the San Jose Property. Mr. Sun also works on leasing the San Jose Property, and on leasing, maintaining, and seeking financing for the JCRS Property owned by Y & K. Thus, this factor is neutral.

---

*Hospitality, Inc.*, 2006 WL 2458679, at *3 (Bankr. D. Colo. Aug. 22, 2006) (Not Reported in B.R.) (citing *Integrated Telecom*).

[22] *See* Disclosure Statement, Exhibit 2, Monthly Operating Report for December, 2015, Exhibit 9 thereto. Telcel has estimated ongoing business value of $5,000 plus inventory of $5,000, but is currently not profitable. The current depreciated value of Telcel's fixed assets is $3,237.

[23] *See Id.*, at Form 2-E, Supporting Schedules.

7

    d. <u>The Suns lack a reasonable possibility of reorganization</u>.

As discussed above, the Suns do not have the ability to effect rehabilitation through Chapter 11. This factor therefore supports a finding of bad faith.

    e. <u>The conversion to Chapter 11 stopped the Kims' collection efforts on their nondischargeable debt</u>.

While there is no foreclosure, the Suns' conversion of their case to Chapter 11 and subsequent filing of an extremely speculative plan, while remaining in control of both the San Jose Property and the stock of Y & K, halted the Kims' ability to collect against the Suns. The Kims hold the only prepetition unsecured debt in this case which has not been discharged. Therefore, this factor supports a finding of bad faith.

    f. <u>Other factors support a finding of bad faith</u>. [24]

The Suns express the desire to pay all their prepetition unsecured creditors. However, all those debts have been discharged, with the exception of the debt of the Kims. The Kims' debt arises from serious malfeasance by the Suns—fraud, larceny, and intentional damage to the Kims' property. The Suns demonstrate bad faith by seeking to pay discharged debts while delaying payment on the nondischarged debt.

The Suns also contend they are the only ones who can operate the San Jose Property and the JCRS Property owned by Y & K. That is not true. A receiver or trustee could operate or liquidate the properties for the benefit of creditors.[25]

For the above reasons, the Court finds cause also exists to dismiss or convert the case because the Chapter 11 proceeding has been pursued in bad faith.

**B.**    **Dismissal or Conversion.**

Despite the fact the Kims' seek dismissal, § 1112(b)(1) requires the Court to make an independent inquiry as to whether dismissal or conversion would be in the best interests of the estate and the creditors. "Ultimately, this decision

---

[24] In addition, due to the posture of this case, that is, property was not acquired shortly before filing or conversion, factors three and four of the list of factors are not applicable.

[25] Ironically, on May 12, 2016, Y & K filed its own Chapter 11 petition (Case No. 16-14761 MER) and in an early pleading requested the appointment of a Chapter 11 trustee to liquidate the JCRS Property.

8

requires the exercise of discretion based upon the totality of the circumstances of the case. The Court starts with the positions of the parties."[26]

Here, the only prepetition creditors affected by the Court's decision are Kims and the secured creditors, the Rosenthal Trust and FNB. The Rosenthal Trust and FNB are entitled to the value of their collateral either in or out of bankruptcy, and have expressed no preference. The Kims wish to pursue collection efforts outside of bankruptcy. The remaining prepetition creditors' debts have been discharged in the Chapter 7, and any return they might receive under a renewed Chapter 7 is speculative for the same reason the Suns' prediction of returns in the Chapter 11 is speculative. Therefore, no purpose would be served by returning the case to Chapter 7.

## CONCLUSION

For the above reasons,

IT IS ORDERED the Motion to Dismiss is GRANTED, and the above-captioned case is hereby DISMISSED.

DATED June 6, 2016                           BY THE COURT:

                                             *[signature]*
                                             Michael E. Romero, Chief Judge
                                             United States Bankruptcy Court

---

[26] *In re Autterson*, *supra*, at *28 (citing *Arkansas, Inc. v. United States Trustee (In re Camden Ordnance Mfg. Co. of Arkansas, Inc.)*, 245 B.R. 794, 802 (E.D. Pa. 2000) ("the creditors are the best judge of their own best interests")). *See also* 7 COLLIER ON BANKRUPTCY 1112-40, ¶ 1112.04[7] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2014) ("Presumably the parties will be the best judge of their own best interests, and if all of the parties agree on one course of action, the court should accommodate their desire.").